The next case called for oral argument is Collin v. Schwan's Home Service. Counsel, whenever you're ready, you may proceed. Go ahead and settle this case. Your Honor, may it please the Court. Counsel, I'm Michael Dahlgren and I represent the defendant appellate in this case, Schwan's Home Services. As the Court's aware, this is an appeal from a substantial verdict of $4,260,000 and an alleged retaliatory discharge case. Punitive damage is worth $3.6 million and compensatory damage is worth $660,000. We've raised in our briefs, which the Court graciously allowed the parties to exceed the 50-page limit due to over 3,000 pages of transcripts and common law record, we've raised approximately seven issues. What I would like to do this morning is confine my argument to three of those issues for the Court. I'll be glad to answer any other questions you may have on other issues. Those three will be the retaliatory discharge, the judicial estoppel, and the punitive damages award. Let me begin with retaliatory discharge. In Illinois, to state a cause of action for retaliatory discharge, you have to show that you were fired for exercising right under the workers' compact. Plaintiff was never fired or terminated for exercising any right under the workers' compact. At best, plaintiff's claim is nothing more than for retaliatory demotion from facility supervisor to a material handler, and this is not recognized in Illinois. Wasn't the jury presented with those two alternative factual claims or theories? In other words, the plaintiff claimed he was fired under the evidence. The defendant said, no, it was just a demotion. That's correct, Your Honor. And the jury decided it. That's correct. That's correct. The jury, based upon, I believe, erroneous evidentiary issues that were before the jury made that determination. But the facts aren't really refuted in the sense that he was demoted. There was a material handler's position that he subjectively said, well, I don't think it exists, and therefore, I'm not going to take it, and therefore, I'm retaliatory discharge. And it takes more than that to state a cause of action for retaliatory discharge. We also rely on Shelley's decision, pointed out in our brief regarding constructive discharge, that simply in this particular case, if he felt that he had to quit due to any acts of the defendant, that that would be constructive discharge, which, again, was not recognized in Illinois. Bottom line is he has to be terminated. Now, we know the facts establish that prior to his demotion from supervisor to material handler, there were some complaints that were set forth in our brief in 2007 and 2008 regarding his handling of this matter. Mr. Wolfenberg, district general manager, held a job performance review of the plaintiff in early 2009. Based upon the poor performance, and it was getting worse over the last two years, he felt that he should be removed from the facility supervisor position. He was already on a job improvement plan at that time. So it was a decision by him and the regional manager, Mr. Kreider, to remove him. Mr. Kreider had the sole authority to create a material handler position for the plaintiff, and that's what he did. That position would have been full-time, 40 hours, would have the same benefits as if he was a facility supervisor. Now, how was he notified of this? We know that on May 20th. How much money would he have in the new job? He was getting, before that, about $40,000. How was he going to get for the new job? Judge, I don't recall the exact amount, but it went from a salary to an hourly, and it was decreased. But as far as whether or not it was less than half, I'm not sure. It's in the record, don't let me discuss it. He was informed on May 20th by Mr. Overstreet in the Human Resources Department that he was going to be removed from the facility supervisor position. Following that, on May 22nd, he had a telephone conference with Mr. Overstreet, and that's the time he was informed that a material handler position had been created for him, but he needed to contact Gary Young. Several days later, in fact, he did have a conversation with Gary Young, and Gary Young said, I'll check on it and let you know, give you the details. On May 28th, 2009, basically a week later, there was a telephone conference between him and Mr. Young, and Mr. Young informed him, you do have a material handler position available for your taking, and it's for your position only. In fact, even in the exhibit, at our index 820, page 99, it says, position, that's the material handler, for me only. So he knew at that time a material handler's position was available for him, and he didn't have to apply for the position, and he had that position ready for him. Now, following this, it was confirmed twice in writing that this position was available for him. We have the workers' comp specialist, Skya, writing him on June 4th saying, you've got the material handler's position available when you come back to work. Without restrictions, that position's available. Contact me. I will hold it open, I believe it was to June 23rd. Never heard from him. So what she did a second time, she wrote a second letter on July 1st saying, by the way, we're going to extend that time for accepting the material handler's position to July 6th, and if you don't accept it on July 6th, we're going to consider this a voluntary resignation and then terminate your employment. Same thing that she mentioned in the prior letter. There was no response from the plaintiff, and he chose to apply for unemployment benefits. Is there anything in the record that explains why those letters came from the workers' compensation specialist and not from the human resources department? Yes, in the record it explains that she had the authority to extend that and mention that as far as the position's available. So, yeah, it wasn't that she did it on her own and that the human resources person had nothing to do with it. The facts show that he was demoted. At no time is there any evidence in any of these letters, Your Honors, that you have been terminated or fired. If you look at retaliatory discharge cases, what you normally find is you're fired, you're discharged because of this reason. Now, the reason may be legitimate or not legitimate, one way or the other, but the point is you're fired or terminated. In no letters, in no conversations was there any termination of Mr. Holland. He chose to voluntarily resign. He was simply never fired. Now, what ties in with this is an evidentiary issue. Judge Stewart, I believe this ties in with your question about the jury. There was an issue of whether or not he was fired. That's the key issue in this case. Was he fired or was he terminated? That's the key issue. I think we all agree to that.  He asked the question of Mr. Overstreet, the human resources person, dealing with this exhibit. And the exhibit was what? It was a decision of the Department of Employment Security saying, by the way, we're awarding you unemployment benefits. For example, the question was by counsel. And in the second line, that's a decision from the Department of Employment Security granting him unemployment, right? Let me ask a question. Is that when the objection came then? Yes. So nobody ever said to the jury, you can't get unemployment if you've been fired or you can't get unemployment if you quit? There was no explanation. I mean, are we supposed to think that people on the jury just knew that? Oh, yeah. I think you can think that, Judge. Because what we have in voir dire in the transcript, you'll see, and also relied on, I believe, page 15 of your reply brief, it's transcript page 87. One of the jurors was awarded unemployment benefits. But from that, we're supposed to know that that juror then knows what circumstances under which you do or do not get benefits? I mean, did the juror say there was an issue about whether he was fired or not? Or did he say there was an issue about whether I quit? He just said, I've drawn unemployment benefits. That's correct. And we know when you draw unemployment benefits under the Act, you can only draw it if you're terminated. We know that. We're lawyers. I think the juror would have known that, too, Your Honor. But more importantly is this. The Act says, don't do it. You can't do it. And what does the court say to that? The Smith case, we decide, we can debate this all day long as far as did they know, what was the significance. The Smith case that we cite in the brief simply says this. When you give that information regarding a decision from the Department of Employment Security, what are you doing? You're inferring that there's a binding force or a determination. Now, that determination, I would think, would be logical that, jeez, you can, if you're fired, you're going to get benefits. If you're not fired, you're not going to get benefits. This is the key issue, Your Honors. And once this happened, as far as the defense goes, we were permanently tainted before the jury. It couldn't be undone. There was a motion for mistrial at that particular time, which was denied. The judge did sustain the objection. He did sustain the objection. But the jury disregarded it, right? Yeah. But as we know. So we're not talking about any evidence that actually came in. We're talking about the old adage, you can't unring a bell. You can give curative instructions. Judge, when you were on the bench, you gave curative instructions at the trial level. I guess the question was, did the bell ever ring here? Yeah. And I think it was rung by simply disclosing that he received the unemployment benefits. Surely you're not going to get into, I don't think you're going to get into jury instructions that would only support that further. By the way, if you got it, you're going to have to be fired. I think that's knowledgeable. But regardless of that, Judge, the point is the act clearly says don't do it, and it was done. There's another ancillary issue regarding the provision of retaliatory discharge, and that deals with the Hartford insurance claims file, which we discussed in our brief. Basically, there was a communication between the insurance adjuster at Hartford and the workers' comp department saying that the plaintiff knew his head was on a chopping block. We believe this was, and the evidence in the law establishes that, was error to introduce this. What this was introduced for was to show that there's some animosity, as repeated repeatedly by the counsel for a plaintiff, that the way the workers' comp file was handled was handled improperly. That does not go to retaliatory discharge. Retaliatory discharge is were you fired, and were you fired for filing the workers' comp claim. Plus, it's inadmissible for a host of reasons that we discussed. Attorney fine privilege, it was prepared in anticipation of workers' comp litigation, it's war product. Basically, for those reasons, that insurance claim should have been admitted. So, what we're suggesting to the court is he wasn't fired, he was demoted, and trying to backdoor this in through the unemployment matter, especially with a juror who got unemployment matters, especially using the introduction of the claims file, was improper, and should have resulted in a judgment notwithstanding the verdict for the defendant. And at the very least, a mistrial. Second issue I want to address is the issue of judicial establishment. Basically, as the court's aware, that simply says that a party in one action cannot take the contrary position in another action. Does it apply to bankruptcy? You bet. And the courts have said, if you're in bankruptcy, and you don't disclose that you have a tort cause of action, we're going to consider that as a representation to the bankruptcy court that you don't have a tort cause of action. But yet, if you bring a tort cause of action, subsequently, that's contradictory, it's contrary to your position that you don't have. And what the courts have done repeatedly throughout the period of time in both state and federal cases, is that you're judicially stopped from bringing your tort cause of action. Now, what does the facts reveal in this particular case? Does it make any difference that the bankruptcy basically just was abandoned and was ultimately dismissed? I mean, as far as the creditors go, I mean, they ultimately maintained their claims. It doesn't matter whatsoever as far as the proposition of judicial establishment. In the other cases you cited where judicial establishment was applied, where it was a bankruptcy case, did those bankruptcies go to final order? Some did. Some didn't. Okay. All right. And that's our point. Okay. That's the fallacy. Well, there really was no harm, no foul. He wasn't discharged. The courts, especially, I want to direct the court's attention to the Cannon-Stokes decision, the Seventh Circuit, and the Burge, B-E-R-G-E, decision in Illinois. Those are, I think, if you had to summarize all the cases, they do the best job. Basically, what the court's saying is the doctrine of judicial establishment is going to apply simply because you didn't list it. The fact that you didn't get a discharge doesn't matter because you're listing it. Why? Because it goes to the integrity of the court system. That's what they're looking for. Let me ask another question. Sure. It's been a long time since I've been involved in any kind of bankruptcy proceedings. But it used to be, as I understood the law, at least in Chapter 7, everything was as of the date you filed the petition. Whatever property you had as of the date you filed the petition became the property of the bankruptcy trustee. And, of course, here this cause of action didn't exist until after the bankruptcy petition was filed. But I noted in your brief you cited a bankruptcy statute. I guess in a Chapter 13 you're obligated to list any after-acquired property? Judge, you're also obligated under Chapter 7. Oh, okay. It's false. In other words, you can't say I'm going to file this bankruptcy matter, Chapter 7 for discharge or Chapter 13 for reorganization. Sit back, don't tell them I've got another cause of action, and say, well, it doesn't matter. No. In the case you're discussing, Your Honor. Well, maybe that's some bankruptcy amendments that have come along in the last few years or something. Okay. And the courts have addressed that, too, as far as you have an obligation to list that bankruptcy ‑‑ I'm sorry, list the tort cause of action. They go even so far as to say not only the actual tort cause of action that you acquired subsequently, even at the time you file it, if you have a potential claim, like an insurance policy, I guess, are you getting health insurance? Has there been any claims against your malpractice? Potential claims, even. But in this case, we don't have to worry about potential claims. We know that in 08, the bankruptcy was filed. In 09, the lawsuit was filed with the tort action, on the tort action, and it was never disclosed at any time. And it was discharged, Your Honor, as you said, in 11, April 11. But at no time were any amendments brought forward. At no time was it ever brought to the court's attention of this tort action. Okay. So let me ask you another question. Sure. This evidently is not an automatic thing. It's an equitable doctrine, and it's up to the discretion of the circuit court whether to apply it. Is that the standard? No, no. I think if you look at the Cannon‑Stokes and the Burge decision, although ‑‑ That's our standard of review. Yeah. It's what I'm asking of the circuit court's decision. And what were the standards up to the circuit court to decide whether or not to apply it? It's going to be a day no review before this court. And in court, then, Cannon‑Stokes says you have an absolute obligation. For example, I think the Cannon‑Stokes decision was one that used a good analogy. I filed a tax return that's improper, that I filed in good faith based upon the representations of my attorney or my accountant. The court said it's still improper. You had an obligation to file it. Particularly in this case, the courts are saying you have an obligation to disclose this. And if you don't disclose it, you are stopped. It's just automatic. Yes. You leave it off your bankruptcy petition. You can never pursue whatever cause of action you left off. I think that's correct, Your Honor. It's a harsh, maybe a harsh result, but I don't think so because the courts are saying if we don't take that approach, what we're going to end up having is people deliberately not listing causes of action and bringing in causes of action once so they can get the entire judgment for themselves. The courts are saying we're talking about the integrity of the court system. Of course, here, since the bankruptcy was dismissed, you know, the creditors still have their claims, and you wouldn't get the entire judgment for himself. Well, the bankruptcy may have been dismissed or discharged, but that doesn't deal, doesn't take away from the fact that you didn't list it. And, in fact, the courts, and in cases we cite in our briefs, say you have an affirmative obligation to reopen or to amend. What's incredible in this case, when the motion for summary judgment was filed on the basis of judicial estoppel, where this was argued before the court, no action was taken. Nobody, the plaintiff did not say, well, I'm going to reopen it and list this and that all as an asset of a bankruptcy court. Nothing was done further. To this day, nothing was done. Once that was discharged, it was like I'm free to go ahead, file my retaliatory discharge cause of action, and keep the judgment just for myself. And that's been rejected by the courts in Burge, Candace Stokes, and other decisions. You can't do that. I'm just reading from your brief the very first sentence under that argument after standard review. Judicial estoppel is an equitable doctrine designed to protect the integrity of the judicial process by preventing litigants from deliberately changing positions according to the exigencies of the moment. Sure. I mean, was there some evidence about whether this was deliberate or? No, the evidence or the argument made in the motion for summary judgment, I should say the objection to the summary judgment, while this was a good faith mistake, what we're suggesting is if you go further, Your Honor, and you look at the Candace Stokes decision and Burge decision, what they're saying is an honest mistake is not sufficient. Basically, you are presumed to, by intentionally not doing it, you are presumed to have debts and bad faith. Or another way of looking at it is by not listening, it's presumed that it was intentional. But I agree with you, it's an equitable doctrine. Thank you, counsel. Thank you, Your Honor. Counsel? Good morning. My name is Tom Crosby. Excuse me. I'm going to place the court at the count of one. I represent Larry Holland. Absent some immediate questions, I'd like to jump into the judicial establishment. Counsel is wrong. Candace Stokes does not stand for the proposition that it's a de novo review. As a matter of fact, Casey relies on most prominently the Burge case, which was decided in September of 2011. Specifically adopts the discretionary use of discretion standard review by citing the case of Searcy v. Chicago City County. And I think that that case, which was another first district case, is very cogent as far as determining, in Illinois, when do we apply judicial estoppel and what purpose does it serve? The United States Supreme Court, the Seventh Circuit, and the First District all agree that the purpose of judicial estoppel is to protect the sanctity of the oath. Not the process, the sanctity of the oath. And Searcy's discussed, does that mean that you need to have a sworn statement under oath? They say no. What you need to have is a statement made to a forum, judicial or administrative forum, in which you make a statement with the intention that they rely upon it. Now, is it a cookie-cutter application that's tough and has to apply because it's not listed? Once again, no. Where do we get that? Both from Cannon, the Seventh Circuit, Easterbrook's decision. From the Burge court, which they're relying on. And more importantly, from the Searcy's court, which Burge adopts and reaffirms as having not a de novo review, but an abusive discretion review. So what are the elements that you look at and when do you apply this? If you look at Searcy, they say that the purpose of judicial estoppel is to prevent an adept litigant from proving Proposition 1 in one forum and an opposite in another due to the exigencies of the moment. At heart, the doctrine prevents a chameleonic litigant from shifting positions to meet the exigencies of the moment. You must have an intentional self-contradiction used to obtain an unfair advantage. An intentional self-contradiction. Here we have an omission. He never said to the bankruptcy court, I don't have a case. The case didn't exist at the time he filed. Now, is there a duty to supplement your schedule? Yes, there is. But is that an ironclad, you didn't do it, therefore judicial estoppel applies? No. Was there some evidence that he reported that he filed this lawsuit to his bankruptcy attorney? Yes, it does, Judge. Let me just ask you on the record, is that by an affidavit or how did that come about? By his affidavit and then at trial, Attorney Brewer asked him if he did and he expressly said he did and that's uncontroverted that he did that. And that's important because you have to look at the intent to deceive. As getting back to Searcy, judicial estoppel is an extraordinary remedy, one which should be applied with caution because it precludes a contradictory position without examining the truth of either statement. Judicial estoppel is applied with caution to avoid impugning the truth-seeking function of the court. Judicial estoppel as a corollary means that the court removes itself from the truth-seeking process. That is not done in a cookie-cutter fashion at all. And if you look at, let's look at the cases that he, and before, let me do, don't move away from Searcy yet. Estoppel is equitable. Applied to readily, it's harsh, rife with the possibility of a penalty outweighing the offense. It applies defensively only, never to give an unfair advantage to the party invoking it. It should not be used where to do so would result in injustice. In terms of the oath requirement, the record must clearly reflect that the party intended the trier to accept the truth of the party's position. It is a flexible and is not reducible to a pat formula. To estoppel a party from urging a position is an extreme measure which should only be taken where the equities are clearly in its favor. There is no, it's not on the schedule, therefore we have judicial estoppel. Both Judge Drew and Judge Van Treese looked at this record, and what did the record show? They looked, and Searcy tells you, you have to look at the intent of the parties. That's part of the exercise of your discretion. Was there an intent to violate the oath and take contradictory positions? What is the evidence in this case? There was an omission, not a statement, okay? So the issue is, was there an intent to conceal? All of the cases, Cannon, Burge, Daly, and Davis, all of the cases relied upon by counsel. All of those appellate courts look at that issue. Did the plaintiff ever tell his attorney? Why? If he tells his attorney, that means he's not trying to conceal it. Let's look at Cannon. Cannon v. Stokes. If there was an intent to conceal, it would be in order to defraud the creditors. Correct. Which in this case, ultimately the creditors maintained all of their claims because the case was dismissed. That's right. Was there a motivation? The motivation to defraud was the prime mover in Cannon v. Stokes. In Cannon v. Stokes, you have a plaintiff who has a claim for discrimination against the Postal Service before she files for Chapter 7. She does not list that claim, but she says, I told my attorney about it. He told me not to list it. So she complies with her attorney's request and becomes complicit in a concealment. Justice Easterbrook said that her attempt was to defraud the creditors to not pay them anything. What about Larry Holland? Larry Holland has a Chapter 13 payment plan. They take the property that's needed to secure the plan, including garnishing his wage. Schwann sends directly to the trustee a wage week by week. What happens? They fire him. Now, what does Holland do? He starts using assets outside of the plan, which you'll see in the 7th Circuit case I talked about, the Bankruptcy Code 1306, says that those assets outside of the plan revert to the management of the debtor. So what is outside of the plan? His comp claim, which was settled and wasn't in existence at the time the plan was confirmed. He takes that money, he pays it to the trustee, he pays his creditors. His marine pension, not part of the plan. He takes that money, he pays it to the trustee, and he pays his creditors. His 401k, not part of the plan. He takes that money, he pays it to the trustee, he pays his creditors. Where is the same intent to deceive? Where is the intent to defraud the creditors? It's not here on this record. This is an inadvertent omission because he had no motive. And how do we know he had no motive? Because he continued to pay his creditors until he ran out of everything. Now, Burgess v. Mader, another 1st District case. They specifically look at the issue of whether or not the debtor plaintiff was attempting to cut out her creditors. What happened in that case, she filed a Chapter 13. A month later, she has a car wreck. She files a lawsuit on that car wreck a year later in 2007. 2009, after that suit is ongoing, she files for Chapter 7. In her schedule, she lists other claims. And the court says it's important to note that she had numerous opportunities to bring this matter before the bankruptcy court and chose not to. She lists other claims, doesn't list the accident claim. She deliberately omits it. What about Larry Holland? He went before the bankruptcy court, got his plan approved months before even his account claim, a year before his discharge. He was there once. The plan was never amended after he lost his job. He never had the opportunity to communicate with the bankruptcy court again because he wasn't trying to amend his plan. He was trying to make the payment. Unlike Burgess, where she first has a plan, then conceals the fact that she has a PI claim when she gets Chapter 7. And the court specifically says she had numerous opportunities to disclose it to the bankruptcy court. Now, she claimed, too, that she told her attorney about it, but the court said, looked at that issue and said, no, there's a dispute regarding whether she told him. Now, there's no dispute here. Larry told his bankruptcy attorney, but nobody ever went back to the bankruptcy court for any reason until it was dismissed months before the summary judgment was filed. Daly v. Smith, which is the case cited by Burge. It's another First District case. It's a 97 case. In that case, there was a guy who lost his job. He said he was part of a partnership. He files bankruptcy, straight 7. In the bankruptcy, on his schedule, he says he's an employee. He denies that there's any partnerships. He gets discharged. Two years later, he files an accounting action saying he was a partner. He's taken diametrically opposing positions that he had wanted the bankruptcy court to believe he was an employee. Then he wants the civil court to believe that he's a partner pursuant to an oral partnership agreement. The jury agrees, awards him money. Judge takes it away because of those deliberate, intentional misstatements which he intended to rely upon. That's not the case here. In terms of some of the other issues that have been discussed here, retaliatory discharge, the issue in this case, one of the issues, was whether Larry was fired for exercising his right to medical under the Comp Act or whether he was demoted. There is a plethora of evidence that he was not demoted, that they made up this job only to reduce their liability to pay a wage difference. How do we know that? He gets a letter on May 20th. What does the letter say? Not that you've been demoted. It says your job's been taken away. You have 30 days to find another job, not only in Schwan's but one of our sister companies. If he was demoted, why not tell him, hey, report for the material handling position? We have e-mails from the workers' comp specialist to his direct supervisor, Young, on May 27th, after he got that letter, in which Skyler is asking Young, is there a position for him? Young responds, May 27th, after they fired him, I don't know. This is a demotion? A demotion that immediately results in your taking away your benefits and loss of pay. That's not as much of a job you want employed if you're not being paid. That's the issue that the jury decided. They had to, in three different instructions, find whether he was terminated or demoted. They said he was discharged in retaliation for the exercise of his rights under the Act. Now, the bell has rung. The bell has rung because the issue of unemployment insurance came up. I filed a motion in limine in this case to prevent the mention of unemployment benefits received. Attorney Rue files a response objecting to that, saying that the amount of benefits shouldn't go in, but that he should be allowed to put in forms from the Unemployment Security Office in order to show a position that Larry took, the position that he is actually demoted. So he, in response to my motion in limine, he says he wants to put in forms from the Unemployment Security. I show a witness an unemployment form. Before any testimony comes up about that, he objects. What does he object to? Not on any statutory grounds, which he has not waived. It's unrelevance. The judge sustains it, tells the jury to disregard it. The jury never sees this is due. What happens next? Defense case in chief. He brings up a raft of forms from the Unemployment Security Office and cross-examines them. Who's ringing the bell here? If this counsel didn't discuss the damages, I won't either. If there's any other questions, I'd be happy to entertain them. I don't believe there are. Thank you, counsel. Counsel? Judicial establishment. I agree that it's to protect the sanctity of the oath and also for the judicial integrity of the court system. But I disagree vehemently with the representation by counsel that it must be intentional. It must be intentional. We've analyzed these cases in our briefs. The Hawkins decision simply says, no, an innocent mistake is not sufficient. You're going to be liable for it. So the fact that the argument is that it must be an intentional misrepresentation is not supported by the case law. Okay, we're obligated to follow. I mean, you cite cases in the Seventh Circuit and so forth. We're obligated to follow the Illinois Supreme Court. And this is from Mr. Crosby's brief, page 28. I'm just reading. This is a quote that he has. Judicial estoppel, quote, is an equitable doctrine invoked by the court at its discretion, close quote. People v. Runge, Illinois Supreme Court, 2009. What about that? Based upon the Birch decision, which is an Illinois appellate court decision, Your Honor, you can call it an equitable doctrine. That's fine. But the question is, does an innocent mistake arise to such a level that it excuses you from listing it in your opinion? I'm just trying to get to what a standard of review is here. And, I mean, I asked you and you said it's an automatic thing. And it was de novo reviews, what you said. But let me read from a quote from the Birch. Consequently, quote, it is well settled that the standard of review when a trial court rules on the application of judicial estoppel is an abuse of discretion standard regardless of the procedural manner in which it was raised. Close quote. That's Birch. And I believe, Your Honor, the reason I said it was a de novo standard in this case is there comes a point in time where you have no material issues of fact. That is, was it or was it not listed, that becomes a question of law for the court. If it's automatic, what is the court exercising its discretion on in the trial court? The trial court in this particular case is going to exercise its discretion on whether or not it was filed or wasn't filed. The fact whether or not it was not filed because of an honest mistake is not going to be a sufficient defense. So when you're talking about exercising your discretion, you're talking about, okay, was it filed or wasn't filed? What's your excuse? And the courts have said the excuse that it's based upon a representation of counsel or an honest mistake is not going to be sufficient. And the courts have drawn a hard line. It doesn't seem like much equity being weighed there. I don't think, yeah, the courts have drawn a hard line. If it's an equitable doctrine. The courts have drawn a hard line on it. There's a quote in Daly v. Smith that we quote. It says, a combination of preexisting knowledge of the claim, a motive for concealment, in the face of an affirmative duty to disclose the claim in bankruptcy, is sufficient to imply that the plaintiff acted in bad faith and that he has played fast and loose with the courts. And I think that's what we're faced with in this particular case. Now, I believe, Your Honor, you said, well, the creditors still have their right. But the courts have already addressed that and said, no, what you're obligated to do is to make them aware of the claim in the bankruptcy court. Theoretically, the creditors may have no idea at this particular time that there is a judgment in favor of the plaintiff from which they could collect. And I think that's one of the reasons the courts say you have to name it. Because it's brought for what? The benefit of the bankruptcy estate. The trustee brings the cost of action. And, of course, what you want us to do is take this verdict away, and then the creditors don't get paid. Well, you take the verdict away, and what happens is you have a new trial. And the question then is, do they have a right to obtain any of the judgment? Wait a minute, wait a minute. If we agree with you on judicial estoppel, there's a new trial? Judicial estoppel, no. I think judicial estoppel would prevent, as Mayor DeVos would, I think. We agree with you on that. It's over. We vacate the judgment, and the plaintiff loses, right? Because of? Sure. The overwhelming need to protect the integrity of the system. Well, I think with judicial, there still is always a need to protect the integrity of the system by enlisting it. But the creditors don't win in that scenario, certainly. No. The creditors, in the scenario that you're dealing with retaliatory discharge or judicial estoppel, the courts are saying, here's your penalty on retaliatory, well, retaliatory discharge. That's an issue we've already debated as far as whether or not he was fired or simply demoted. On judicial estoppel, what the court's saying is, you're not allowed to bring this cause of action. You're getting nothing, no judgment, because it's not for the benefit of the estate or the creditors. Will they, if that's followed, which the courts follow, will the creditors get anything? Absolutely, probably not, if it's followed. Okay. But that doesn't take away from the fact of the obligation to disclose it. The intent to deceive, again, that's no defense. Regarding briefly and rebuttal to the retaliatory discharge issues, counsel mentioned, well, they just made up this job, material handler's position. He wasn't, it really wasn't there. You can't rely on a subjective intent. Your Honors, it's simply this. If you had that situation as the court in Zimmerman said, what would happen is the courts would be involved in every business decision determining whether or not a job exists or doesn't exist. What the courts have said, no, you need the termination. That's what you need. The fact that a job existed or didn't exist, it's one way, it's real easy. What I found interesting in reviewing the transcript, at no time did Mr. Holland ever show up and say, I'm here. Let's have the material handler's position. I'll call you, if that's what you're going to say it is. At no time did he ever do it. At no time was he ever fired or terminated. The material handler's position was there for his, his, for the taking. Now, counsel makes a point on, well, if you look at the first letter, boy, it just simply says you've been demoted, we're removing you from that position, but it makes no provision or reference to the fact that there was a material handler's position available. I submit to the court, you can't take one letter. It says you have to apply for another position. Nowhere does it say you're fired. And more importantly, I'm- Well, okay, let me just ask. Sure. Then he gets a call from, I can't remember his name, but somebody- Overshoot. He gets a call from somebody and says, we've got this job for you. Go talk to Young. He goes and talks to Young. Young says, basically, I don't know what you're talking about. I'll check into it. Right? Yeah, I don't know if he knew if it's that exact word that you said. So, so that wouldn't give you a lot of confidence that there was really a job there. Well- And the guy you're told to talk to says, well, first I've heard of it. What the confidence is, Your Honor, within a day later says, I've checked into it, the material handler's position is available, and it's for you only. Mr. Holland, the plaintiff, says, for me only. I have the position. What I'm suggesting to the court is you have to look at the course of conduct. From May 20th, Your Honor, to May 28th, the exchange of letters and the exchange of telephone conferences. We knew a material handler's position was created. But more importantly is what's ignored by opposing counsel is the fact that Ms. Scalia in the workers' comp department sent two letters, June and July, saying, by the way, as you are aware, you have this material handler's position. You haven't shown up. You have it June 23rd. Nothing happens. Sends another letter. We're going to extend it to June 6th. If you don't show up, what? Your employment will be terminated at that time. Did the jury have to just accept that this was a real job? Judge, regardless of whether or not it was a valid offer or whether or not the job existed, his subjective intent that the job didn't exist has nothing to do with and didn't create an issue as to whether or not it in fact existed. I mean, wasn't there a jury question here about whether he was terminated or not? You're saying there's only one way to view the evidence. Yeah, and I believe under these circumstances there is only one way to view the evidence, Judge. Assuming you say he had a subjective belief that the material handler's position did not exist, that alone is not sufficient to say that he was fired. Assuming that's correct, what would that be? I don't have a material handler's position. Therefore, it's not there. Therefore, I'm forced to resign because I don't have a position. Similar to constructive discharge. Why wouldn't you just look at the 520 letter? It says your position's gone. You can apply for other positions. As of that date, he's terminated, right? But he can look for a job there or anyplace else he wants. And that's where I respectfully disagree with you. He has to take the material handler's job where he hasn't been fired? No. It comes along a few days later? What I'm suggesting is on May 20th it says you've been demoted. That's the key. It doesn't say that in the letter, does it? I'm sorry, not demoted. The fact is you've been removed. That's the key issue. You've been removed from your job and you can apply for another one. And apply for another position would be you're not terminated. When you demote somebody, you demote somebody from being a supervisor, maybe into applying for a position of a janitor, maybe being applied for a position of some other managerial position. But the point is this, Your Honor. There is nothing in the evidence that says he was terminated. And more importantly, as you look at the course of conduct during that period of time, not just the isolated 52011, but you look at the whole course of conduct, and the whole course of conduct says, guess what? We have confirmed you do have a material handler's position. He says, I don't believe you. We're suggesting to the court his subjective belief cannot be sufficient to create a cause of action for retaliatory discharge. Because if that was the case, anybody could say, I don't believe you. I'm not firing you. Dismissed. Thank you, counsel. Thank you, Your Honor. We appreciate the briefs and arguments of counsel. We appreciate the number of arguments. And I don't believe there are any further oral arguments scheduled before the court, so we're adjourned.